**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abigail Ratchford, et al., | No. CV-22-01629-PHX-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Watford Specialty Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 14). For the following reasons, the Court grants the Motion.

**I.    BACKGROUND**

This case stems out of two earlier cases, in which Plaintiffs—thirteen professional models—sued two strip clubs for misappropriating their images and likenesses and using them in advertisements. (Doc. 1 at 2). The Dalton Plaintiffs sued Dalton Corporation ("Dalton"), which owns Chicas Cabaret in Phoenix, Arizona, in the U.S. District Court for the District of Arizona. (Id. at 3); Ratchford v. Dalton Corp., Case No. 19-cv-1421-PHX-SRB. They secured a $565,000 consent judgment. (Doc. 1 at 3); (Doc. 1-2 at 4). The 4Play Plaintiffs sued 4Play Gentlemen's Lounge, LLC ("4Play") in Florida state court and secured a $675,000 consent judgment. (Doc. 1 at 3, 12); Gray v. 4Play Gentlemens Lounge LLC, Case No. 20-004534-CI (Fla. Cir. Ct.).

Both strip clubs were insured at the time by commercial general liability insurance policies ("the Policies") issued by Defendant Watford Specialty Insurance Company

("Watford"). (Doc. 1 at 3).[1] The Dalton Policy covered a period between February 12, 2017 and February 12, 2018. (Doc. 1 at 6). The 4Play Policy[2] covered a period between August 4, 2016 and August 4, 2018. (Id. at 9).

The Policies contain a section pertaining to "personal and advertising injury liability." (Doc. 14-2 at 41-44). Section 1 states that Watford will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." (Id. at 41).

"Personal and advertising injury" is defined as "injury . . . arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises. . . ;

d. Oral or written publication, in any manner, of material that slanders of libels a person of organization of disparages a person's or organization's goods, products, or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. Oral or written publication, in any manner, of another's images, photographs, likenesses or personal attributes."

(Id. at 47).

---

[1] The Court considers these Policies under the "incorporation by reference doctrine" because they have been provided in full and are referenced in the Complaint, undisputed, and central to both parties' arguments. See Biltmore Assocs., LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 665 n.1 (9th Cir. 2009). The Court also takes judicial notice of the complaints in the two underlying cases for similar reasons and because these court filings are matters of public record. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

[2] Technically, two consecutive year-length policies. (Doc. 1 at 9).

The section pertaining to "personal and advertising injury liability" contains a number of exclusions. (Id. at 41-44). The section begins by stating, "This insurance does not apply to:" before providing a list of exclusions. Each exclusion contains a heading in bold with every word capitalized and then non-bold and uncapitalized statements underneath the heading.

One such exclusion pertains to "**Material Published Prior To Policy Period.** 'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period." (Id. at 41).

Another such exclusion is headed "**Infringement of Copyright, Patent, Trademark Or Trade Secret**." (Id. at 42). This exclusion contains two subsections: (i)(1) and (i)(2). (Id.) Subsection (i)(1) states: "'Personal and advertising injury' arising out of the actual or alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (Id.) Subsection (i)(2) states: "'Personal and advertising injury' arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes whether altered or unaltered." (Id.)

During litigation in the two earlier cases, Watford denied the strip clubs' request for defense and coverage. (Id.) On September 23, 2022, Plaintiffs filed a Complaint in this Court, bringing a breach of contract action against Watford. (Doc. 1). Plaintiffs argue that Watford was obligated under the terms of the Policies to defend and cover the strip clubs. (Id. at 12). They do so as assignees of the two strip clubs, who each assigned all of their claims against Watford and rights under the Policies to Plaintiffs. (Id. at 3, 9, 12). Plaintiffs seek compensation for the costs and expenses incurred in the underlying cases, a defense and indemnity under the operative insurance policies, the full amount of the Dalton and 4Play judgments, costs and disbursements, and all accruing interest. (Id. at 3-4).

On December 19, 2022, pursuant to Rule 12(b)(6), Watford filed a Motion to Dismiss for Failure to State a Claim. (Doc. 14). The Motion is fully briefed. (Docs. 17, 20).
///

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation omitted). Rule 12(b)(6) must be read in conjunction with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint need not provide detailed factual allegations but must provide more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to raise a right to relief above the speculative level and to "state a claim that is plausible on its face." Id. at 555, 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

When a court is deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996) (citing Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).

Ordinarily, a court may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). However, courts may consider matters of judicial notice. (Id. at 908). "A court may take judicial notice of matters of public record," Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). As such, judgments and other court documents are proper

subjects of judicial notice. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007). A Court is permitted to take judicial notice *sua sponte*. See, e.g., Callan v. N.Y. Cmty. Bank, 643 Fed. Appx. 666, 666 (9th Cir. 2016).

Further, the "incorporation by reference" doctrine allows a court deciding a Rule 12(b)(6) motion to consider documents incorporated by reference, but not physically attached to the complaint if such documents are central to the plaintiff's claim and their authenticity is undisputed. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted).

## III.   DISCUSSION

At the center of this dispute is a disagreement as to the correct interpretation of an exclusionary provision contained in each of the Policies. In its Motion to Dismiss, Watford points to the Policies' exclusion of coverage for "'[p]ersonal and advertising injury' arising out of the actual or alleged use of another's images, photographs, likenesses, or personal attributes whether altered or unaltered." (Doc. 14 at 7). This exclusion, Watford argues, is unambiguous and Plaintiffs' claims against 4Play and Dalton "fall squarely within" it. (Id.)

Plaintiffs deny that this exclusion applies to their claims. (Doc. 17 at 4). They also argue that in the alternative, if the exclusion does apply, then it is void because it renders illusory the protections it supposedly offers. (Id. at 9). Before addressing these arguments, the Court will first establish some basic tenets of insurance policy interpretation.

The "interpretation of an insurance contract is a question of law . . . ." Sparks v. Republic Nat'l Life Ins. Co., 647 P.2d 1127, 1132 (Ariz. 1982). An insurance policy is "read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." Charbonneau v. Blue Cross of Wash. & Alaska, 634 P.2d 972, 975 (Ariz. Ct. App. 1981). Courts should attempt to give effect to all provisions so that none are "rendered meaningless." Am. Fam. Mut. Ins. Co. v. White, 65 P.3d 449, 453 (Ariz. Ct. App. 2003). "Provisions of insurance policies are to be construed in a manner according to their plain and ordinary meaning." Sparks, 647 P.2d at 1132. "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court

will not pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something to the contract which the parties have not put there." D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis., 396 P.2d 20, 23 (Ariz. 1964). When policy language is unambiguous, a court may not create ambiguity to find coverage. Sec. Ins. Co. v. Andersen, 763 P.2d 246, 248 (1988). "An interpretation of a contract which renders it unreasonable should be avoided." Custom Roofing Co. v. Transamerica Ins. Co., 584 P.2d 1187, 1189 (Ariz. Ct. App. 1978).

If a clause in an insurance contract "appears ambiguous, [courts] interpret it by looking to legislative goals, social policy, and the transaction as a whole." First Am. Title Ins. Co. v. Action Acquisitions, LLC, 187 P.3d 1107, 1110 (Ariz. 2008). "If an ambiguity remains after considering these factors, [courts] construe it against the insurer." Id. This rule applies "with even greater force where the ambiguity appears in an exclusionary clause." Roberts v. State Farm Fire & Cas. Co., 705 P.2d 1335, 1336-37 (Ariz. 1985). "In determining whether an ambiguity exists in a policy, the language should be examined from the viewpoint of one not trained in law or in the insurance business." Sparks, 647 P.2d at 1132. "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785, 788 (Ariz. Ct. App. 2000).

### A. Whether the Exclusion Applies

The Policies contain a three-and-a-half-page section dedicated to "Personal and Advertising Injury Liability." (Doc. 14-2 at 41). Under that section, Watford agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. . . . However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." (Id.)

The phrase 'personal and advertising injury' appears between apostrophes because it is a defined term under the Policies. (Id. at 35). Under the Policies' Definitions section,

the phrase is defined by six subsections, including as "injury . . . arising out of . . . oral or written publication, in any manner, of another's images, photographs, likenesses or personal attributes." (Id. at 50).

Clearly, Plaintiffs' underlying claims fall under this term. Indeed, the parties do not dispute that these claims represent a 'personal and advertising injury' as defined by the Policies. The dispute is instead whether their claims are excluded by one of two relevant exclusions. The section dedicated to "Personal and Advertising Injury Liability" outlines a number of exclusions to coverage. (Id. at 41). Among these is section (i), headed "Infringement of Copyright, Patent, Trademark or Trade Secret." (Id. at 42). Under this heading are two subsections: (i)(1) "'personal and advertising injury' arising out of the actual or alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights" and (i)(2) "'personal and advertising injury' arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes whether altered or unaltered." (Id.)

Because Plaintiffs' claims in the underlying actions were centered around the misappropriation of their likenesses, such claims—under the plain language of the Policies—would seem to be excluded from coverage under (i)(2). To combat this intuitive reading of the exclusion, Plaintiffs argue that this exclusion does not apply because it must be understood in reference to the heading under which it appears—"Infringement of Copyright, Patent, Trademark or Trade Secret." (Doc. 17 at 5-7). The Court must read (i)(2) in reference to the heading, Plaintiffs assert, so as to give meaning to all terms, which means, here, to that heading. (Id.) Essentially, Plaintiffs argue that (i)(2) excludes injuries arising out of the use of another's images, photographs, or likenesses only if such use is related in some way to copyright, patents, or trademarks. Because Plaintiffs' claims, they argue, are unrelated to copyright, patent, trademark, or trade secret infringement, they are therefore not excluded by this provision. (Id.)

In reply, Watford argues that (i)(2) should not be read in conjunction with its heading, citing a case from the District Court for the Northern District of California that

- 7 -

1 applies California law and a case from the Third Circuit. (Doc. 20 at 3). Watford also
2 argues that Plaintiffs' interpretation of this section would render (i)(2) itself superfluous.
3 (Doc. 20 at 5). If read Plaintiffs' way, Watford argues, (i)(2) is "already included" in the
4 much broader (i)(1), which includes *all* claims relating to copyright, patents, or
5 trademark. (Id.) Thus, (i)(2) becomes redundant if it only applies to claims relating to
6 copyright, patents, or trademark, which are already covered by (i)(1).

Watford has the better side of this argument. Although its placement is slightly odd, the exclusion is clear and unambiguous. The Court will not create ambiguity to find coverage, Andersen, 763 P.2d at 248, or expand the language beyond its plan and ordinary meaning, D.M.A.F., 396 P.2d at 23, by awkwardly adding language to (i)(2) that incorporates the heading under which it falls. Indeed, adding such language would simply render that very subsection meaningless, as such a resulting exclusion would already be covered by the broader (i)(1).

Even when placing (i)(2) in its broader context, Watford's interpretation prevails. Section (i)(2), like the other exclusions, must be read in conjunction with the phrase that begins the Exclusions section: "This insurance does not apply to: . . ." This language only makes sense and forms full sentences when read in conjunction with the actual subsections, such as (i)(2), rather than with the headings. As such, the exclusion clearly reads: "This insurance does not apply to 'Personal and advertising injury' arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes whether altered or unaltered." This exclusion is unambiguous and excludes Plaintiffs' underlying claims.

### B.    Illusory Coverage

Plaintiffs next argue that even if the Court were to agree with Watford as to the applicability of section (i)(2), the Court should not apply the exclusion because doing so would render the Policies' coverage illusory. (Doc. 17 at 7).

Plaintiffs cite a variety of cases for the proposition that courts should not interpret insurance policies in such a way that would render coverage null or illusory. (Doc. 17 at 7-

9). Under Arizona law, "a policy interpretation that would result in no payment of benefits under any reasonably expected circumstance—or 'render coverage null'—is illusory." Hanover Ins. Co. v. Vemma Int'l Holdings Inc., Case No. CV-16-10710PHX-JJT, 2016 WL 4059606 at *8 (D. Ariz. July 29, 2016) (citing Wilshire Ins. Co. v. S.A., 227 P.3d 504, 507-08 (Ariz. Ct. App. 2010); Aetna Cas. & Sur. Co. v. Dannenfeldt, 778 F. Supp. 484, 493 (D. Ariz. 1991)).

Here, (i)(2) renders neither null nor illusory the Policies' coverage for 'Personal and Advertising Liability'—it simply narrows it. That section covers 'personal and advertising injur[ies],' a term defined by six subsections, (15)(a) through (f). (Doc. 14-1 at 47). Exclusion (i)(2) does not exclude all coverage under this section, only one form of it—that defined by (15)(f). The Policies still provide coverage for five other forms of 'personal and advertising injury:' (15)(a) through (e). As such, the Policies still offer the insured effective protection for 'personal and advertising liability.'

None of the cases cited by Plaintiffs constitute mandatory authority that this Court must follow. Regardless, each of these cases demonstrate why (i)(2) does not render the Policies' coverage illusory. These cases focus on the "completeness" of the exclusion of coverage. (Id. at 8-9) (citing Travelers Indemnity Co. of Conn. v. Richard McKenzie & Sons, Inc., 10 F.4th 1255 (11th Cir. 2021). For example, in Travelers Indemnity, the Eleventh Circuit held that coverage was illusory where a policy "grants coverage with one hand and then with the other *completely* takes away the *entirety* of that same coverage. *Completeness is the key*." 10 F.4th at 1265 (emphasis added). Similarly, ACE Cap. Ltd. v. Morgan Waldon Ins. Mgmt., LLC, 832 F.Supp.2d 554, 572 (W.D. Pa. 2011) and Aspen Specialty Ins. Co. v. 4 NYP Ventures, LLC, 162 F.Supp.3d 337, 345 (S.D.N.Y. 2016) both hold that coverage is illusory when "the insured purchases no effective protection." The other cited cases all also emphasize that the exclusions must effectively eliminate coverage completely in order to render coverage illusory.

Again, (i)(2) does not "completely" remove coverage. 10 F.4th at 1265. The strip clubs did not "purchase[] no effective protection." 832 F.Supp.2d at 572; 162 F.Supp.3d at

345. The exclusion simply narrows coverage. As such, the Policies' coverage for 'personal and advertising liability' is neither rendered null nor illusory.

### C. Libel and Slander Coverage

Plaintiffs argue that Watford was not only obligated to defend and indemnify the strip clubs because their underlying claims involved the use of another's photo, image, and likeness, but also because they involved allegations of libel and slander. (Doc. 17 at 11). One of the definitions of 'personal and advertising injury' under the Policies is "oral or written publication, in any manner of material that slanders of libels a person . . . or disparages a person's . . . goods, products, or services." (Doc. 14-1 at 47). Here, Plaintiffs claim that their image and likeness constitute their 'goods, products, or services.' (Doc. 17 at 11). Plaintiffs assert that both underlying complaints alleged disparagement of Plaintiffs' goods, products, or services, and therefore Watford was obligated to defend and indemnify the strip clubs in relation to those complaints. (Id.)

Plaintiffs argue that the Dalton Complaint alleged such disparagement by alleging under its false light invasion of privacy claim that Dalton's use of their images created an impression about Plaintiffs that would be "objectionable to a reasonable person" and had harmed Plaintiffs' "professional reputation[s]." (Id.) (citing Doc. 43 at 24).

As for the 4Play Complaint, Plaintiffs highlight the repeated allegations of "irreparable harm" to the Plaintiffs' "reputation[s] and brand[s]" through the advertisements' attribution to the Plaintiffs of the strip club's "adult entertainment and striptease lifestyle and activities." (Doc. 17 at 11) (citing Doc. 14-4 at 41, 43).

In response, Watford argues that section (i)(2) excludes Plaintiffs' claims because such claims arose out of the use of the models' images, photographs, or likenesses. (Doc. 20 at 8).

Again, Watford has the better side of this argument. Regardless of whether Plaintiffs adequately pled libel and disparagement claims sufficient to trigger coverage under the Policies, such allegations are clearly excluded by (i)(2). Any such libel, slander, or disparagement arose out of the strip clubs' use of Plaintiffs' image, photographs, and

- 10 -

1 likenesses and was thus excluded by (i)(2). As Watford notes, none of the cases relied
2 upon by Plaintiffs include an exclusionary clause similar to (i)(2).

3 Again, this does not render coverage null or illusory. The Policies still offer
4 coverage for injuries arising out of oral or written publications that slander or libel—so
5 long as such injuries do not arise out of the use of another's image, photographs, or
6 likeness. The archetypal instances of libel or slander—a public written or oral statement
7 disparaging an individual or entity—remain covered by the Policies.

**D.     Prior Publication**

Watford also argues that the claims of Plaintiffs Pinder, Hathaway, Ratchford, and Patrick were excluded from coverage because their images were first published before the policy periods began. (Doc. 14 at 8). The Policies' section dedicated to "Personal and Advertising Injury Liability" includes an exclusion headed "material published prior to policy period." (Doc. 14-2 at 41). Specifically, the Policies do not apply to "'personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period." (Id.)

**(1)     Prior Publication of Patrick**

Plaintiffs acknowledge that 4Play first published an image of Patrick seven months prior to the start of the insurance policy. (Doc. 17 at 14). However, because that initial publication was on 4Play's Instagram page and subsequent publications were on their Facebook page, Plaintiffs argue that the publications reached different audiences and thus do not constitute republication and are not covered by this prior publication exclusion. (Id.) In reply, Watford argues that because the later publications on Facebook were substantially similar to the prior publication on Instagram, the prior publication rule applies. (Doc. 20 at 10).

To aid their argument that the prior publication exclusion does not apply when material is republished on a different platform because the new platform represents a new audience, Plaintiffs cite to Larue v. Brown, 333 P.3d 767 (Ariz. Ct. App. 2014). However, as Watford points out, the Larue court's analysis was made in a different context. Larue

deals with the single publication rule, which protects defendants from being sued separately for each copy of a book or newspaper containing an allegedly defamatory statement and prevents the statute of limitations from being reset each time a copy of that publication is purchased or read. Id. at 771-72. Neither Larue nor the other two cases that Plaintiffs cite address the issue raised here—the applicability of a prior publication exclusion in an insurance contract.

More on point is Street Surfing, LLC v. Great Am. E & S Ins. Co., which deals with an almost identical prior publication exclusion in an insurance policy. 776 F.3d 603, 610 (9th Cir. 2014). A prior publication exclusion, the Ninth Circuit explained, is designed to "bar coverage when the wrongful behavior . . . began prior to the effective date of the insurance policy." Id. (punctuation removed) (quoting Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1072 (7th Cir. 2004). "[T]he exclusion bars coverage of injuries arising out of republication of that advertisement, or any substantially similar advertisement . . . because such later publications are part of a single, continuing wrong that began before the insurance policy went into effect." Id. A later advertisement is thus excluded if it is "substantially similar" to the pre-coverage advertisement. Id.

As the Street Surfing court noted, in assessing whether a subsequent advertisement is "substantially similar" to a pre-coverage advertisement, courts do not consider all differences between them, but instead "focus[] on the relationship between the alleged wrongful acts manifested in" the advertisements. Id. at 612-613 (italics omitted). For instance, in Taco Bell Corp., the Seventh Circuit used an example of a copyright-infringing article originally published in a magazine and then later republished as part of an anthology. 388 F.3d at 1073. Even though the anthology would be a "much different [] work", the wrongful act—that is, the copying of the copyrighted article without authorization— "would be the same" and therefore the prior publication exclusion would apply. Id.

The Seventh Circuit's analogy, also referenced in Street Surfing, is an apposite one here. In the present case, the pre-coverage advertisement was published on Instagram and the subsequent advertisements were published on Facebook, just as in the Seventh Circuit's

example the pre-coverage publication took place in a magazine and the subsequent publication occurred in an anthology. The wrongful act—there, the use of a magazine article without authorization and here, the use of Patrick's likeness without authorization—is the same. The fact that Facebook and Instagram might have different audiences is irrelevant—just as the fact that a magazine and an anthology might have different audiences was irrelevant to the Street Surfing and Taco Bell Corp. courts. Because the wrongful use of Patrick's likeness without her authorization was the same in both the pre-coverage and coverage periods—indeed, 4Play used the very same image—the insurance policy's prior publication exclusion applies. Watford therefore had no duty to defend or indemnify 4Play for the claims made by Patrick.

### (2) Prior Publication of Pinder, Hathaway, and Ratchford

The advertisements featuring Pinder, Hathaway, and Ratchford require a different analysis. Unlike the pre- and post- coverage period advertisements featuring Patrick, which were identical save for the platform on which they were published, Plaintiffs did not allege—and the parties do not agree—that these advertisements were identical. There does not appear to be any shared understanding between the parties as to the number and content of these advertisements.

Watford argues that the prior publication exclusion applies to these three Plaintiffs because in their complaint in the underlying action, Plaintiffs allege that the first advertisements were published before the coverage period began. (Doc. 14 at 9-10). Watford notes that in the Dalton Complaint, Plaintiffs did not allege that any advertisements published during the coverage period were different to the pre-coverage advertisements. (Id. at 10).

Plaintiffs counter that when Watford denied Dalton coverage, it had not seen the advertisements of the three models that had been published during the policy period because these advertisements were not attached as exhibits to the complaint. (Doc 17 at 15). As a result, Watford's Motion to Dismiss does not compare the content of the images published pre-coverage period and those published during the coverage period. (Id. at 15-

16). In their Response, Plaintiffs attach some of these advertisements as exhibits, (Doc. 17-5), and highlight differences between the pre-coverage images and the images published during the coverage period. (Doc. 17 at 16-17).

However, the Court may not consider these advertisements. A court may consider documents offered by a *defendant* in a motion to dismiss if the documents form the basis of the plaintiff's complaint or if the complaint makes extensive reference to the documents. Khoja, 899 F.3d at 1002. Hence, this court's examination of the two Policies. However, there is a general prohibition against a *plaintiff's* introduction of evidence at the motion to dismiss stage. Id. The purpose of this prohibition is to prevent plaintiffs from "selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken . . . their claims." Id. (citation omitted).

Plaintiffs may not incorporate by reference the attached advertisements. The rationale behind this prohibition is made clear in this case because Plaintiffs have not attached all the relevant advertisements. Rather, they have only attached three advertisements featuring Ratchford and one featuring Rosario (who Watford has not claimed is excluded under the prior publication exclusion). (Doc. 17-5). They have not supplied advertisements featuring Pinder or Hathaway and it is possible that 4Play used other, non-attached advertisements featuring Ratchford.

As for the fact that the Dalton Complaint did not affirmatively allege that the advertisements posted pre- and post- coverage period were different, nor did that complaint allege that they were identical or even similar. This is in stark contrast to the 4Play Complaint's allegations surrounding Patrick, where the 4Play Plaintiffs alleged that the post-coverage period advertisements featuring Patrick constituted a "re-upload[]" of "the same image" that had been posted before the coverage period. (Doc. 14-4 at 21). Although Watford might ultimately prevail on the applicability of the prior publication rule as to Pinder, Hathaway, and Ratchford's claims, the Court cannot make any determination on the issue at the motion to dismiss stage, based on the underlying complaints and the Polices alone.

The Court must therefore deny Watford's Motion to Dismiss as it relates to the prior publication of advertisements featuring Pinder, Hathaway, and Ratchford. The Court does not have all of the relevant advertisements before it and the precise number and content of these advertisements is not currently in the record. Any analysis here will likely involve the comparison of various advertisements and a determination as to whether advertisements published pre- and post- coverage period are "substantially similar." This constitutes a question of fact, requires discovery, and is thus not suitable for determination at the motion to dismiss stage. Regardless, Pinder, Hathaway, and Ratchford's claims must be dismissed because they are excluded under the plain and unambiguous language of section (i)(2), as discussed above.

**IV.  CONCLUSION**

Watford was not obligated to cover and indemnify Watford and 4Play in the underlying actions because the operant Policies excluded coverage for Plaintiffs' claims. Those Policies also excluded the claims brought by Plaintiff Tara Leigh Patrick on separate grounds. As such, the Court will grant Watford's Motion to Dismiss.

When granting a motion to dismiss based on Rule 12(b)(6), a court must give the plaintiff leave to amend, unless it finds that any amendment would be futile. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001). Here, it is unclear how Plaintiffs could cure their Complaint because they cannot change the underlying complaints or the Policies, which are undisputed and form the basis of this ruling. As such, the Court finds that any amendment would be futile and will dismiss Plaintiffs' claims with prejudice.

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant's Motion to Dismiss. (Doc. 14).

**IT IS FURTHER ORDERED dismissing with prejudice** Plaintiffs' claims.

///

///

///

1  ///

2  **IT IS FURTHER ORDERED directing** the Clerk of the Court to terminate this
3  action.

4  Dated this 6th day of March, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge